Good morning, Judge Fischer, Judge Bybee, Judge Bea. My name is Mike Allen. I'll be arguing for defendants' appellates in the O'Connell case. I will try to be brief because a lot of the issues have already been addressed in the previous case, although there are some differences which I'd like to address in our case. And I'd also like to reserve two or three minutes for rebuttal, please. First, I'd just like to start by talking about a couple of recent Supreme Court cases that were published. The first was on May 18th of 2015, just a couple of weeks ago. County of San Francisco v. Sheehan. We have been talking about that. You do remember. There were a couple of points raised in that decision that I'd like to kind of go into my argument based on some of the language. One of the key points that Sheehan reemphasized was that an officer cannot be said to have violated a clearly established right unless existing precedent placed the question beyond debate. Second, courts are not to judge officers by 20-20 hindsight when conducting the qualified immunity analysis. And why I point those things out here is the facts of the underlying case in O'Connell involve a 1984 investigation. Now, at the time of that 1984 investigation, there was no holding in terms of precedent that police officers were required to conduct the same Brady analysis that prosecutors were required to. That is, to evaluate the evidence, make a determination whether something is in fact Brady evidence or not Brady evidence, and then affirmatively turn it over. And what I'd like to do is draw the court's attention to some language in a Fourth Circuit case called Gene v. Collins, which we cited in our papers. And the site to the case is 221 F. 3rd, 656, and the pertinent language I want to quote is on page 660 of the decision. And what the court said there was, The Brady duty is framed by the dictates of the adversary system and the prosecution's legal role therein. Legal terms of art define its bounds and limits. The prosecutor must ask such lawyers questions as whether an item of evidence has quote-unquote exculpatory or quote-unquote impeachment value and whether such evidence is quote-unquote material. It would be inappropriate to charge police with answering these same questions, for their job of gathering evidence is quite different from the prosecution's task of evaluating it. This is especially true because the prosecutor can view the evidence from the perspective of the case as a whole, while police officers who are often involved in only one portion of the case may lack necessary context. Now the reason why I bring that up is, and I understand it's a Fourth Circuit case and I know it's not binding, but the rationale applies no differently whether we're in the First Circuit, Second Circuit, Third Circuit, or this circuit. Because the role of the prosecutor and the role of the police officer is the same in California as it is in any other state. That is, police officers gather evidence. They make a determination whether they have enough evidence to submit the case to a prosecutor for prosecution. The prosecutor takes that evidence and needs to make sure they secure a valid conviction, making sure they comply with all due process obligations required, including Brady. Now in 1984, as I've mentioned, there was no case that ever held that police officers had the same obligation as prosecutors to evaluate evidence, to determine whether or not it constituted Brady evidence, and take additional steps to disclose it. Now I know that your honors have brought up the Butler case, and certainly that case was a preview of what the circuit would ultimately do in 2009 and actually hold that the obligations applicable to prosecutors also apply to police officers. But let's step into police officers' shoes in 1984. First of all, we know that under the Qualified Immunity Analysis, police officers are not required to understand the law to the same degree as a legal scholar or a judge. Now, Butler itself, what it said was, the taint on a prosecution is no less if the evidence not disclosed was in the hands of a police officer but unknown to the prosecutor. We all know that. Now that can be read in different ways. One, it can be read that a police officer has the same obligation as a prosecutor to determine what's exculpatory, what's impeachment, what's Brady, what's not Brady, and turn it over. Another way of reading that is to say that the prosecutor better make very well sure that they turn over every stone. They can't make the excuse, I didn't know about it. They better question every single police officer, what evidence do you have, what did this witness say, what did you do during the lineup? And if those questions aren't asked, the prosecutor can't make the excuse, I didn't know about it. That's the other way of reading Butler. But needless to say, we know from our papers that courts in the Third Circuit, courts in the Fourth Circuit, courts in numerous circuits, including as recently as 2012 in Lynn v. Tarney, the Fourth Circuit said that this state of law as to whether a police officer has the same obligations under Brady as prosecutors... Let me bring it down, let's get specific here. So if the prosecutor gets information from the detectives who said we put six guys in a lineup, we brought a witness in here, and the witness said I think it's either number one or number six but I can't be sure. And that information is conveyed completely accurately to the prosecutor. Does the prosecutor have to turn that information over to the defense? You have to say that an eyewitness, somebody that you're going to call at trial, and it turns out that number six is the defendant, but he identifies it as either number one, it might be number one or it might be number six, I'm not sure. Does the prosecutor need to turn that over? I would believe so. Okay, and I think you're right. Okay, now does that mean then that the detective has to advise the prosecutor of the same thing? That's a good question, Your Honor, and I think your question... I thought so. And I really think as we stand here today, in light of Tennyson and in light of all the cases that have come out as we're sitting here, I think the answer is yes. But once again, this is why I started with the language from Chief. Why do you say yes? I mean, the language you quoted about Brady being in an adversary capacity, an adversary setting. A prosecutor has a greater feel for what is important in a trial, what will depreciate the value of his own witnesses in terms of impeachment than does a policeman. Does a policeman have to have the same sophistication and clairvoyance as to the effect of negligent impeachment testimony as does a prosecutor? In an ideal world, yes, but in reality, I don't think that's really feasible because I don't believe police officers have the same kind of legal training that a prosecutor does. But that's why they turn it over to the prosecutor and disclose it and let that prosecutor can then make the judgment. Well, I mean, I think the best course of action is to err on the side of caution. If you're not sure of something, turn it over to the prosecutor. Is that a constitutional rule, you must err on the side of caution? That is not the constitutional rule. I thought it was beyond debate. No. And actually, I know I have less than two minutes left. I wanted to reserve a couple minutes for rebuttal, but make one quick point before I do. As we pointed out in pages 21 through 22 of our opening brief, the law of what actually constituted Brady material. Brady was published in 1963. What constituted Brady material was still in flux even throughout the 80s. In fact, it wasn't until 1985, a year after the underlying investigation, that the United States Supreme Court in United States v. Bagley actually made it clear that Brady does not make a distinction between impeachment evidence and exculpatory evidence in terms of what needs to be disclosed. And the reason why that's very important is because a bulk of the evidence that was allegedly not disclosed here was impeachment evidence. So if prosecutors weren't even clearly aware of what's Brady and that impeachment evidence encompassed that, then certainly how could you apply that same standard to a police officer when, at that time, there was no holding that a police officer was required to evaluate and comply with Brady to the same degree as prosecutors? I see that I'm now under a minute, so I'd like to reserve the remainder for rebuttal. Thank you, Your Honors. Mr. Litt? Well, let me start with Gene V. Collins since Mr. Allen referred to that. Gene V. Collins recognized the police obligation. What it said was that the state of mind standard was a good face standard. This court has addressed that issue in Tennyson and held that it's a deliberate indifference or reckless disregard standard. But neither of those state of mind issues goes to the duty to disclose. They may go to, and this is what Gene was talking about, what is the state of mind required to find an officer liable under Section 1983, an issue not before this court because that's really not the issue in qualified immunity. So the state of mind issue, which is what Gene was talking about, really doesn't apply here to clearly establish analysis. What applies here is whether or not the duty was clear. Whether the police officer will be held liable. Okay, so let's stop a minute, though. Okay, so on the photo array concept, and the officer thinks the hesitation is just the normal activity or behavior of a witness. Wait a minute, let me finish my question. You'll get a chance. So is he supposed to, in his reporting to the prosecutor, report all the close calls, err on the side of caution? And if he doesn't, and then the prosecutor would later say, you know, that in retrospect was exculpatory evidence. Would your argument be, well, then he had the duty to disclose it to the prosecutor, and he's not entitled to qualified immunity, but at trial, he can explain why he didn't disclose it. Is that how you address those, or does that fall back into whether it was clearly established, as counsel has argued, or was it? I think the way you described it is how I would primarily answer it, which is basically the police officer, first of all, the standard of what is favorable is not that complicated. I mean, that is the Brady standard. It's evidence favorable to the accused. You know, we can get into nuances where somebody hesitates for a moment, and part of the qualified immunity sort of framework is whether or not there's a constitutional violation. That's not being alleged here. And the actual conduct that we have here based on the allegations in the O'Connell complaint or the facts as presented in the summary judgment in Carrillo are much more extreme than that. They are basically situations in O'Connell where the witness basically says, I told him I couldn't recognize anybody. I told him I wanted to be hypnotized. I mean, I could go on and on. And I think if an officer chooses to say, well, I'm not sure that that's, and if it in fact is Brady evidence, the officer is responsible, and the officer has to make that choice just like the officer has to make that choice every day in exercising his or her obligations as a police officer. But having said that, the officer will have the argument, at least under Ninth Circuit law, that he didn't have the state of mind requisite to hold him liable. The second point that Mr. Allen made was that Bagley was the first case to discuss impeachment evidence. That's really not so. Giglio is clearly impeachment evidence, and that's 1972. And there's no question that after Giglio, both impeachment evidence and the fact that the trial prosecutor doesn't have the information makes no difference is explicitly clear and expressed. The third thing that I want to raise, although it hasn't been raised here, is in, I didn't raise it in the last argument, but Judge Fisher, when you asked about the level of specificity, I just want to point out that part of the evidence here that we're claiming is exculpatory as alternative suspect evidence. And so I do want to just cite the court to cases where, at least implicitly, the court has said that alternative suspect evidence constitutes Brady. Brady itself was a confederate's confession. And obviously the relevance of that is that the confederate confessed to having actually done the murder, and that was important and favorable, so that's alternative suspect evidence. A year later, in Imler v. Craven, the issue was fingerprints and the coat not belonging to the suspect, both of which are relevant because they point to an alternative suspect, and Imler is the case where the district court decision, which is affirmed in general terms by the Ninth Circuit, where the court says there's no doubt that police are covered by Brady, and it cites to Barbie, Barbie itself, which is right after Brady. Pardon me for interrupting you, but I have a note here. You're telling me that, if I took it right, the officer still would have the state-of-mind defense to be liable, and that in the Ninth Circuit you take it to be deliberate indifference? Under Tennyson, what Tennyson said was that it basically adopted a substantive due process standard for viability. And I think the quote is deliberate indifference or reckless disregard for the truth or the rights of the accused. Well, now, let me keep you on that issue, because one of the questions that Judge Fischer put was, suppose that the officer, in good faith, thinks that the hesitation of the witnesses to identify is normal, because that's what witnesses always do when they come to the station house. But you would say that would be Brady exculpatory material, hesitation, and you should turn it over to the prosecutor. But if we're applying deliberate indifference, I understand deliberate indifference to be knowledge of a substantial risk that the rights of the defendant are going to be violated. If he thinks that this, if in good faith the police officer thinks that this is normal reluctance and not witness hesitation which impedes his credibility, aren't we back at the same thing? Well, I think the way that I would frame it is that if there's just hesitation, it's probably not Brady information, because hesitation is normal. So when we're talking about Brady evidence, we're talking about actions that are self-evidently significant as to the issues at hand. And so the facts here that we have are far beyond any hesitation. And frankly, I do this work a lot, and I would not be taking a case where what I had as Brady evidence was that the person hesitated for a few seconds. In fact, Mr. Drucker hesitated. He said that he hesitated, and that's not the basis of our Brady claim. The basis of our Brady claim is not that he hesitated, but that he said he couldn't recognize somebody who wasn't reported, that he said he wanted to be hypnotized because he didn't know who it was that wasn't reported. Much more extreme conduct than that. And this is a judgment on the pleading, so we take all allegations of that sort to be true. Correct. So Tennyson itself, of course, had third party statements implicating another person. Kyle's itself involved a car that was not in the area where the suspect's car was thought to be. I'm just pointing these out, even though they haven't been raised specifically, because I do want to make clear that alternative suspect evidence also was clearly established, even at whatever level of specificity is required under the substantive case law. And I will stop there unless there are any further questions. Thank you, Mr. Litt. Thank you. Three quick points, and then I'll be done, Your Honors. First, Pozen Counsel said that I cited U.S.B. Bagley as claiming it was the first case to hold that impeachment evidence constituted Brady. That's not what I said. What I did say was U.S.B. Bagley was the first time the United States Supreme Court actually clarified that there is no distinction between impeachment evidence and exculpatory evidence for the purposes of Brady. And in fact, the circuit case below held that impeachment evidence did not constitute Brady evidence, which is why that went to the Supreme Court in the first place. So there was some ambiguity at the time of 1985 and in 1984 on that. Second, on the state of mind issue, for purposes of qualified immunity, courts have made it very clear that the issue is whether the officer was plainly incompetent or knowingly violated the law. I don't think that standard has been met given the state of the law in 1984. And finally, I'd like to quote you, Judge Fischer, from a decision you published a couple of years ago in 2012, Padilla v. U. As your Honor may recall, it was a torture case, and the plaintiffs in that case said, well, of course, you have a right to be free from torture. And your Honor said, in light of the debate, as well as the judicial decisions discussed above, we cannot say that any reasonable official in 2001 through 2003 would have known that the specific interrogation techniques allegedly employed against Padilla, however appalling, necessarily amounted to torture. And what the circuit did in that case was looked at the fact that you had a military detainee in that case. And while prior courts had held that you cannot torture an American citizen, it had never been held that you can't torture a military detainee. And this court looked at the specific factual context to hold that qualified immunity applied. I ask that the court do so in this case, as well. Thank you very much, Your Honors.
judges: Fisher, Bybee, Bea